151 P.3d 240 (2007)
In re the MARRIAGE OF Roberta JESS nka Pfau, Appellant, and
Daniel P. Jess, Respondent.
No. 24975-1-III.
Court of Appeals of Washington, Division 3.
February 1, 2007.
*241 Robin D. Andrews, Attorney at Law, Spokane, WA, for Appellant.
Kelly Malone, Maxey Law Office, Spokane, WA, for Respondent.

PUBLISHED OPINION
BROWN, J.
¶ 1 Roberta Jess (now Pfau) appeals the trial court's denial of her request for an order for judgment against Daniel Jess for postsecondary educational support for their son, Phillip.[1] Roberta contends the trial court erred in imposing new support order conditions and in deciding it was inequitable to require Daniel's payment without first showing her payments. We hold the support order's limited conditions were satisfied and that Roberta's payments are separate. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

FACTS
¶ 2 Roberta[2] and Daniel Jess are bound by a child support order granted in their 1995 marriage dissolution. At issue is Phillip's postsecondary educational support. The order required Phillip to "mak[e] available all academic records and grades to both parents." Clerk's Papers (CP) at 5. Roberta and Daniel were to pay two-thirds of Phillip's net college expenses, and Phillip was to pay the remaining one-third. The order provided a formula for determining the support obligation, after deducting for grants, "as set for state university students by government financial aid standards." CP at 5. For calculation of periodic payments, Phillip was to provide his parents with a yearly written notice indicating whether he planned to attend three or four quarters during the year.
¶ 3 Phillip wrote to his father in 1996 telling him he planned to attend an Oregon community college. Daniel replied in October 1996, wishing him well. Phillip sent his father his grades at the end of that fall quarter without response. Our record shows Phillip studied continuously to complete his bachelor's degree and teaching certificate by 2003. Phillip did not send Daniel transcripts or letters telling the number of quarters he planned to attend after 1996 and he did not provide tuition cost information. Phillip unsuccessfully requested support from his father on one or two occasions after his fall 1996 letter. Daniel either ignored the requests or denied them. Phillip took out student loans to pay for college. Daniel refused to co-sign the student loans.
¶ 4 In 2005, Roberta and Phillip unsuccessfully moved for an order against Daniel for Phillip's unpaid postsecondary educational support. The trial court partly concluded Phillip failed to fulfill certain conditions by not providing Daniel with: (1) copies of his educational records and grades, (2) written notices of his intent to attend school for three or four quarters per year, and (3) contemporaneous financial records for the cost of tuition, books and supplies, and room and board. The court further concluded it would be inequitable to require Daniel to pay postsecondary educational support without a showing that Roberta paid her share of the expenses. Roberta appealed.

*242 ANALYSIS
¶ 5 The issue is whether the trial court erred in concluding Phillip failed to fulfill the conditions necessary to obligate Daniel to pay postsecondary educational support and in deciding it was inequitable for Roberta to seek Daniel's postsecondary support without first showing she made her required payments. Essentially, Roberta contends the court imposed conditions not existing in the child support order.
¶ 6 We note Roberta challenged several findings of fact in her notice of appeal that are not addressed in her brief. The challenges are deemed abandoned. In re Marriage of Lutz, 74 Wash.App. 356, 372, 873 P.2d 566 (1994).
¶ 7 We review child support decisions for an abuse of discretion. In re Marriage of Fiorito, 112 Wash.App. 657, 663-64, 50 P.3d 298 (2002). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. Id. We interpret a child support order as written if it is clear and unambiguous on its face. In re Marriage of Bocanegra, 58 Wash.App. 271, 275, 792 P.2d 1263 (1990). A document is unambiguous if its terms are susceptible to solely one meaning. Harding v. Warren, 30 Wash.App. 848, 850, 639 P.2d 750 (1982). We review a document's construction "by examining the document itself to find out its intended effect." In re Marriage of Monaghan, 78 Wash.App. 918, 924, 899 P.2d 841 (1995).
¶ 8 RCW 26.19.090 sets conditions for receiving postsecondary educational support. RCW 26.19.090(4) requires a child to "make available all academic records and grades to both parents as a condition of receiving postsecondary educational support. Each parent shall have full and equal access to the postsecondary education records." The phrase "make `available'" is not defined by the legislature. See RCW 26.19.090(4). When statutory language is left undefined, we apply its common meaning as defined by the dictionary. In re Marriage of Drlik, 121 Wash. App. 269, 277, 87 P.3d 1192 (2004). The term "available" is defined by the dictionary as "accessible or may be obtained."
WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 150 (1993).
¶ 9 Here, the sole condition language is found in section 3.13.1: "Post-secondary support is conditioned on." CP at 4 (emphasis added). Section 3.13.1.3.3 includes the statutory condition in RCW 26.09.090 for "Phillip Jess making available all academic records and grades to both parents." CP at 5. On the other hand, sections 3.13.2-3.13.4 are unconditioned and show how to calculate, divide, and pay for Phillip's educational support. For example, section 3.13.2 obligates the parents to pay two-thirds of Phillip's net support obligation, calculated according to the formula shown in the facts, and Section 3.13.3 sets Phillip's portion of the payment obligation. Section 3.13.4 merely sets the payment obligation split for Daniel and Roberta and provides a monthly payment methodology for the parents:
3.13.4 The mother shall pay 17 % and the father 83 % . . . of two-thirds of the Net Post-Secondary Support Obligation as follows:
3.13.4.1 By the final enrollment date of the first quarter of each academic year Phil[l]ip Jess shall have decided and given written notice to his parents whether he intends to enroll for three quarters or four quarters for that academic year. The annual Gross Post-Secondary Support Obligation shall be calculated by multiplying the quarterly obligation times three or four quarters, as is appropriate.
3.13.4.2 The father and mother shall each pay one-twelfth (1/12th) of his or her proportion of the annual Gross Post-Secondary Support Obligation each month, on the 1st of each month.
CP at 6.
¶ 10 Considering section 3.13.1 alone contains conditional language, the trial court abused its discretion in concluding Phillip failed to fulfill the conditions necessary to obligate his parents to pay postsecondary support because it applied an erroneous view of the order's legal effect, an untenable ground. Fiorito, 112 Wash.App. at 663-64, *243 50 P.3d 298. The court's child support order is unambiguous. Bocanegra, 58 Wash.App. at 275, 792 P.2d 1263.
¶ 11 First, the order incorporates the statutory conditions in RCW 26.19.090, requiring Phillip to "mak[e] available" his academic records and grades to both parents. CP at 5. RCW 26.19.090(4) explains "[e]ach parent shall have full and equal access to the postsecondary education records." According to the dictionary, the phrase "make available" does not require Phillip to actually "provide" or "give" his father the information without being requested to do so. RCW 26.19.090(4); WEBSTER'S, supra, at 150. No evidence showed Daniel either requested grade transcripts or enrollment information or that Phillip withheld consent for the information. Thus, substantial evidence does not support finding D, criticizing Phillip for not providing Daniel with grade transcripts, enrollment evidence, quarterly attendance, specific educational costs, or grants. In re Marriage of Hall, 103 Wash.2d 236, 246, 692 P.2d 175 (1984). Therefore, the conditions in conclusions B and C are factually unsupported.
¶ 12 Second, the postsecondary support order is conditioned solely on the terms of section 3.13.1. Those conditions do not include a requirement that Phillip provide his parents with written notice of his intent to attend either three or four quarters per year. The requirement that Phillip provide his parents with written notice is instead found under section 3.13.4 that addresses how the parents calculate, divide, and pay their support obligations. No consequence is stated for Phillip's failure to provide the written letter. Again, conclusions B and C are unsupported by the facts.
¶ 13 Third, the support order does not require Phillip to provide his parents with the actual cost of tuition, books, supplies, or room and board as a condition to receiving support. As noted, the order provides a specific formula for calculating the support obligation based on references not requiring actual expense information.
¶ 14 Finally, equity does not require proof of Roberta's support payments in order to trigger Daniel's support obligation. The two are not interdependent or conditioned one upon the other. Thus, whether Roberta paid support is irrelevant to Daniel's obligation. Therefore, conclusion A, deciding the inequity of Daniel's support payments is error.
¶ 15 In sum we hold the trial court erred by abusing its discretion in taking an erroneous view of the legal requirements flowing from the child support order. McCausland, 129 Wash.App. at 406, 118 P.3d 944. We deny Daniel's request for attorney fees and costs under RAP 14.3 and RCW 26.09.140.
¶ 16 Reversed and remanded for further proceedings consistent with this opinion.
WE CONCUR: SCHULTHEIS, A.C.J., and KULIK, J.
NOTES
[1] While various spellings of Phillip are found in the record, we use this form for clarity.
[2] The parties' first names will be used to avoid confusion.